UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STEVEN H. ANDERSON, JACK S. FLUG, and
JEFFREY R. LATTMANN,

                          Plaintiffs,            Case No. 08 Civ. 2378 (DAB)

      – against –

MARSH & MCLENNAN COMPANIES, INC.,
MARSH USA INC., and DOES 1 through 50, inclusive,

                          Defendants.
-------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO DISMISS
## DEFENDANT MARSH USA INC.'s COUNTERCLAIMS


FENSTERSTOCK & PARTNERS LLP
BLAIR C. FENSTERSTOCK, ESQ.
JEANNE M. VALENTINE, ESQ.
30 WALL STREET, 9TH FLOOR
NEW YORK, NY 10005

*ATTORNEYS FOR PLAINTIFFS/COUNTERCLAIM DEFENDANTS*

**TABLE OF CONTENTS**

Page

Table of Authorities ............................................................... ii

PRELIMINARY STATEMENT ....................................................... 1

STATEMENT OF FACTS ............................................................ 2

ARGUMENT ........................................................................ 9

I.    THE COUNTERCLAIMS FAIL TO ALLEGE FACTS SUFFICIENT TO PLACE
      PLAINTIFFS ON NOTICE OF THE CLAIMS MADE AGAINST THEM ................ 9

II.   MARSH HAS FAILED TO SET FORTH A CLAIM FOR BREACH OF CONTRACT ...... 11

III.  MARSH HAS FAILED TO SET FORTH A CLAIM FOR BREACH OF FIDUCIARY
      DUTY ..................................................................... 13

IV.   MARSH HAS FAILED TO SET FORTH A CLAIM FOR MISAPPROPRIATION OF
      CONFIDENTIAL AND PROPRIETARY INFORMATION ........................... 15

V.    MARSH HAS FAILED TO SET FORTH A CLAIM FOR TORTIOUS INTERFERENCE
      WITH BUSINESS RELATIONS AND PROSPECTIVE BUSINESS RELATIONS ........ 16

VI.   MARSH HAS FAILED TO SET FORTH A CLAIM FOR UNFAIR COMPETITION ....... 20

VII.  MARSH HAS FAILED TO SET FORTH A CLAIM FOR RECOUPMENT .............. 22

CONCLUSION ...................................................................... 23

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*American Fed. Group, Ltd. v. Rothenberg,*
   136 F.3d 897 (2d Cir. 1998) ..................................................... 14

*Architectronics, Inc. v. Control Sys., Inc.,*
   935 F. Supp. 425 (S.D.N.Y. 1996) ............................................. 15, 16

*Astroworks, Inc. v. Astroexhibit, Inc.,*
   257 F. Supp. 2d 609 (S.D.N.Y. 2003) ............................................. 20

*Bulger v. Royal Doulton, PLC,*
   05 Civ. 7709 (DAB), 2006 WL 3771016 (S.D.N.Y. Dec. 19, 2006) .................. 22

*Command Cinema Corp. v. VCA Laboratoriess, Inc.,*
   464 F. Supp. 2d 191 (S.D.N.Y. 2006) ............................................. 11

*Commercial Data Servers, Inc. v. Int'l Bus. Mach. Corp.,*
   166 F. Supp. 2d 891 (S.D.N.Y 2001) ............................................. 21

*Constantin Assoc. v. Kapetas,*
   No. 601305/2006, 2007 WL 4294732 (N.Y. Sup. Dec. 6, 2007) .................. 17

*Czech Beer Imp., Inc. v. C. Haven Imp., LLC.,*
   No. 04 Civ. 2270(RCC), 2005 WL 1490097 (S.D.N.Y. June 23, 2005) .............. 21

*Data Broad. Corp. v. Tele-Commc'ns, Inc.,*
   No. 92 Civ. 4840 (JFK), 1992 WL 350624 (S.D.N.Y. Nov. 19, 1992) ............... 21

*Deutsch v. Kroll Assoc. Inc.,*
   No. 02 Civ. 2892 (JSR), 2003 WL 22203740 (S.D.N.Y. Sep. 23, 2003) ............. 13

*Envirosource, Inc. v. Horsehead Res. Dev. Co., Inc.,*
   No. 95 CIV 5106, 1996 WL 363091 (S.D.N.Y. July 1, 1996) ....................... 17

*FTI Consulting, Inc. v. Graves,*
   No. 05 Civ. 6719 (NRB), 2007 WL 2192200 (S.D.N.Y. July 31, 2007) .............. 14

*Finkelstein v. Wachtel,*
   No. 00 Civ. 2672(JSM), 2003 WL 1918309 (S.D.N.Y. Apr. 21, 2003) .............. 17

ii

**Page**

*Higgs v. Carver,*
    286 F.3d 437 (7th Cir. 2002) ..................................................... 10

*In Re Initial Public Offering Sec. Litig.,*
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ............................................. 10

*Interboro Packaging Corp. v. G.P. Plastics Corp.,*
    No. 02 Civ. 2140(RO), 2003 WL 21403807 (S.D.N.Y. June 18, 2003) .............. 16

*Knight-McConnell v. Cummins,*
    No. 03 Civ. 5035 (NRB), 2004 WL 1713824 (S.D.N.Y. July 29, 2004) ............. 19

*LaSala v. Needham & Co., Inc.,*
    04 Civ. 9237 (SAS), 2006 WL 452024, 3 (S.D.N.Y. Feb. 24, 2006) ............... 13

*Lesavoy v. Lane,*
    304 F. Supp. 2d 520 (S.D.N.Y. 2004) ...................................... 10, 12

*Lombard v. L-3 Comm'ns Corp.,*
    Nos. 98 Civ. 5277 (DC), 98 Civ. 9039, 2000 WL 1459824
    (S.D.N.Y. Sept. 29, 2000) ................................................ 14, 15

*PKG Group, LLC v. Gamma Croma, S.p.A.,*
    446 F. Supp. 2d 249 (S.D.N.Y. 2006) ........................................... 18

*Rose v. Goldman, Sachs & Co., Inc.,*
    163 F. Supp. 2d 238 (S.D.N.Y. 2001) ........................................... 11

*Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.,*
    No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan. 23, 1985) ........................ 11

*Straker v. Metropolitan Transit Auth.,*
    333 F. Supp. 2d 91 (E.D.N.Y. 2004) ............................................ 10

*Strapex Corp. v. Metaverpa N.V.,*
    607 F. Supp. 1047 (S.D.N.Y. 1985) ............................................. 18

*Texas Liquid Holdings, LLC v. Key Bank Nat'l Ass'n,*
    No. 05 CV 5070 (KMW), 2007 WL 950136 (S.D.N.Y. Mar. 27, 2007) ................ 11

**Page**

*Trautenberg v. Weiss LLP,*
    No. 06 Civ. 14211 (GBD), 2008 WL 850163 (S.D.N.Y. Mar. 27, 2008) .............. 10

*United States v. Forma,*
    42 F.3d 759 (2d Cir. 1994) ..................................................... 22

*United States v. Green,*
    33 F. Supp. 2d 203 (W.D.N.Y. 1998) ............................................. 22

*United States v. Hayward-Robinson Co.,*
    430 F.2d 1077 (2d Cir. 1970), *cert. denied,*
    400 U.S. 1021, 91 S.Ct. 582 (1970) .............................................. 22

*Utility Research, Inc. v. Generac Power Systems, Inc.,*
    No. 05-4940, 2006 WL 1408360 (2d Cir. May 18, 2006) ......................... 13

*W.S.A., Inc. v. ACA Corp.,*
    Nos. 94 Civ. 1868 (CSH), 94 Civ. 1493  1996 WL 551599
    (S.D.N.Y. Sept. 27, 1996) ....................................................... 17

*Wynder v. McMahon,*
    360 F.3d 73 (2d Cir. 2004) ..................................................... 10

## STATE CASES

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,*
    406 N.E.2d 445, 50 N.Y.2d 183 (N.Y. 1980) ..................................... 18

*LoPresti v. Massachusetts Life Ins. Co.,*
    820 N.Y.S.2d 275, 30 A.D.3d 474 (2d Dep't 2006) ............................... 18

*Louis Capital Mkts., L.P. v. Refco Group Ltd.,*
    9 Misc. 3d 283, 801 N.Y.S.2d 490 (N.Y. Sup. Ct. 2005) .......................... 14

*M.J. & K. Co., Inc. v. Matthew Bender and Co.,*
    220 A.D.2d 488, 631 N.Y.S.2d 938 (2d Dep't 1995) .............................. 18

*Polar Int'l Brokerage Corp. v. Richman,*
    737 N.Y.S.2d 79, 291 A.D.2d 219 (1st Dep't 2002) ............................... 18

**Page**

*Simon v. Becherer,*
   775 N.Y.S.2d 313, 7 A.D.3d 66 (1st Dep't 2004) ................................. 13

*Sullivan & Cromwell LLP v. Charney,*
   84 N.Y.S.2d 222, 15 Misc. 3d 1128 (A) (N.Y. Sup. 2007) ......................... 13

*Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,*
   843 N.Y.S.2d 749 (N.Y. Sup. 2007) ............................................... 19

*Vigoda v. DCA Product Plus Inc.,*
   741 N.Y.S.2d 20, 293 A.D.2d 265 (1st Dep't 2002) .............................. 18

## FEDERAL STATUTES

Fed. R. Civ. P. 8(a) ................................................................ 9, 10

## RULES

N.Y. C.P.L.R. 214(4) .............................................................. 13, 15

v

## PRELIMINARY STATEMENT

Plaintiffs Steven H. Anderson, Jack S. Flug, and Jeffrey R. Lattmann respectfully submit this Memorandum of Law, together with the Affidavit of Blair C. Fensterstock (the "Fensterstock Aff.") and the exhibits annexed thereto, in support of their Motion to Dismiss the Counterclaims asserted by Defendant Marsh USA Inc. (referred to herein as "Marsh"),[1] with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A copy of Plaintiffs' Amended Complaint[2] is annexed to the Fensterstock Aff. as Exh. 1 and a copy of Defendants' Answer To Amended Complaint and Counterclaims is annexed to the Fensterstock Aff. as Exh. 2.

The Amended Complaint alleges various acts of wrongdoing perpetrated by Defendants in connection with Plaintiffs' previous employment at Marsh. The Amended Complaint seeks to recover damages for Marsh's breach of contract for its failure to pay Plaintiffs their earned special retention awards, annual bonuses, severance pay, and for their earned option awards. In response, Marsh has served its Answer with seven Counterclaims, asserting counterclaims for Plaintiffs' purported breach of non-solicitation agreements (first counterclaim) and confidentiality agreements (second counterclaims), breach of alleged fiduciary duty (third counterclaim), misappropriation of confidential and proprietary information (fourth counterclaim), tortious interference with business relations and prospective business

---

[1] While Marsh USA Inc. and Marsh & McLennan Companies are named defendants in this action, the Counterclaims have been asserted on behalf of only Marsh USA Inc.

[2] Plaintiffs served a Complaint on February 4, 2008 in New York State Supreme Court, New York County, Index No. 600345/2008. Defendants removed the action to this Court on March 7, 2008. On March 28, 2008, Plaintiffs served an Amended Complaint as a matter of right, which remains the operative pleading in this matter.

relations (fifth counterclaim), unfair competition (sixth counterclaim), and recoupment (seventh counterclaim).  For the reasons set forth herein, the Counterclaims should be dismissed in their entirety, with prejudice.

## STATEMENT OF FACTS

Plaintiff/counterclaim-defendant Mr. Anderson was employed in various capacities by Marsh from August 1989 through December 30, 2004, his most recent title being Chairman of all of U.S. FINPRO Client Advisory. Compl. ¶ 10.  FINPRO was an operating unit of MMC with about 540 employees in 2004 and earned large profits for its parent company.  Compl. ¶¶ 10-11.

Plaintiff/counterclaim-defendant Mr. Flug was employed in various capacities by Marsh from March 1995 through December 30, 2004, his most recent title being Managing Director and Vice Chairman of FINPRO.  Comp. ¶ 12.  Plaintiff/counterclaim-defendant Mr. Lattmann was employed in various capacities by Marsh from 1990 through December 30, 2004, his most recent title being Managing Director and Head of all U.S. FINPRO Placement. Compl. ¶ 13.

In or around 2002, Messrs. Anderson and Flug received offers of employment from AON, Marsh's biggest competitor.  Compl. ¶¶ 14-15.  Mr. George Mikes, a senior employee at Marsh, induced both men to stay at Marsh by offering them additional compensation and restricted stock options. Compl. ¶¶ 14-15.  As a direct result of this offer and out of loyalty to Marsh, Messrs. Anderson and Flug continued their employment with Marsh. Compl. ¶¶ 14-15.

On or around October 14, 2004, then- New York Attorney General Eliot Spitzer commenced a lawsuit on behalf of the State of New York entitled *Spitzer v. Marsh & McLennan Companies, Inc. et al.,* Index No. 403342/2004, alleging certain wrongful acts, including

fraudulent business practices, antitrust violations, and fraud. Compl. ¶¶ 16-17. As a result of this lawsuit, Marsh witnessed a drop in its stock value and employees rightfully panicked. Compl. ¶¶ 16-17.

On November 18, 2004, Messrs. Anderson and Flug accepted a Special Retention Award from Marsh in the amount of $300,000, which the company offered them as an inducement to stay. Compl. ¶¶ 18-19. Based on the promise that they would be employed through the vesting of the Retention Award (unless terminated for cause), Messrs. Anderson and Flug agreed to stay with Marsh. Compl. ¶¶ 18-19. This award, according to its Terms and Conditions, was to be paid in cash and/or readily tradable Marsh Stock over the course of one year, on a quarterly basis. Compl. ¶ 18. The dates of disbursement were to be on or around:

- March 31, 2005          10% of total award
- June 30, 2005           15% of total award
- September 30, 2005      25% of total award
- December 31, 2005       50% of total award

According to the Terms and Conditions, to be eligible to receive these payments, the employee must be actively employed by Marsh on the last day of the quarter preceding the payment date, and "not serving notice . . . of resignation at the time." Compl. ¶ 18. For example, to be eligible for the March 31, 2005 award, the Plaintiffs were to be actively employed on December 31, 2004. Compl. ¶ 18. If an employee was terminated involuntarily, he or she would be eligible to receive the payment for the full quarter in which he or she was terminated but would not receive future payments. Compl. ¶ 18. If the employee was terminated "for cause" (which is defined as misconduct, including any act or behavior that

3

violates Marsh's policies or standards of conduct, or may subject the individual or Marsh to civil or criminal liability), he or she would forfeit all future payments and be required to repay all prior retention award payments, including the value of any shares received. Compl. ¶ 18.

Also on November 18, 2004, to induce him to stay at Marsh, Mr. Lattmann was offered and accepted a Special Retention Award from MMC in the amount of $104,000. Compl. ¶ 20. The Terms and Conditions of this Award are identical to those of Messrs. Anderson and Flug. Compl. ¶ 20.

In mid-December 2004, Mr. Anderson had a conversation with George Mikes, the then-chairman of the Global Risk Management Practice at Marsh. Compl. ¶ 22. During this meeting, Mr. Anderson, a loyal employee, inquired in good faith about his options for taking on increased and different responsibilities in the future within Marsh for the purpose of aiding the suffering company. Compl. ¶ 22. Mr. Mikes stated to Mr. Anderson, "I don't think this is going to happen for you." Compl. ¶ 22.

During a meeting in mid-December 2004, Mr. Anderson expressed his concerns that the company was in trauma and that he believed that those in elevated positions, such as himself, needed to take active steps to repair the ailing business. Compl. ¶ 23. He also expressed his own desire and intent to personally help the firm. Compl. ¶ 23. It was in all of Marsh employees' best interests to help rescue Marsh from turmoil, for many employees, including Plaintiffs, are stockholders of Marsh. Compl. ¶ 24.

Between October 14 and December 30, 2004, Plaintiffs admitted to senior employees at Marsh that they were exploring possibilities both within and outside of Marsh; however,

4

while doing so, they continued to seek opportunities to assist Marsh during this time of uncertainty and continued to carry on their duties in good faith. Compl. ¶ 25. Between mid-October and the end of December 2004, two other Marsh employees, Tom Zacharopoulos and Henry Whiting, actively sought employment opportunities outside of Marsh and actively recruited Plaintiffs to leave Marsh. Compl. ¶ 26. Unlike Plaintiffs, no retaliatory action was taken against these two men. Compl. ¶ 26.

In or around late December 2004, Dean Klisura, Managing Director and Chairman of FINPRO Placement, informed Mr. Lattmann that he was aware that certain insurance brokers were interested in hiring Mr. Lattmann away from Marsh. In order to prevent him from leaving, Mr. Klisura induced and encouraged Mr. Lattmann to stay at Marsh by offering him additional compensation and stock options. Mr. Lattmann made no response at that time. Compl. ¶ 27.

Around December 20, 2004, George Mikes informed Mr. Flug that he would be replacing Mr. Anderson with Dean Klisura as Chairman of all of U.S. FINPRO Client Advisory. Compl. ¶ 28. Mr. Flug, in turn, informed Mr. Mikes that he would be away on vacation until December 30, 2004. Compl. ¶ 29. However, upon his return to the office, Mr. Flug received multiple voice messages from Mr. Mikes demanding a return call by the close of business the previous day, December 29, 2004. Compl. ¶ 29. At no time before this arbitrary deadline did Mr. Mikes attempt to reach Mr. Flug by mobile telephone or e-mail, even though these were available on a directory of contact information to which Mr. Mikes had access. Compl. ¶ 29.

On December 30, 2004, Mr. Mikes called Mr. Flug's mobile telephone with Pamela Harrison (then- Senior Vice President of Marsh's Human Resources Department) also on the

5

line. Compl. ¶ 30. Knowing that Mr. Flug had been out of the office on vacation, Mr. Mikes irrationally accused Mr. Flug of intentionally ignoring his messages and terminated his employment effective immediately. Compl. ¶ 30. On the same day, Mr. Mikes left voice mail messages for Messrs. Anderson and Lattmann informing them that they were terminated, although no explanation was provided. Compl. ¶¶ 31-32.

On December 30, 2004, Plaintiffs each met individually with Pamela Harrison to discuss their termination. Compl. ¶ 33. She informed Plaintiffs that they were each fired "for cause," due to alleged "lack of confidence." Compl. ¶ 33. Because they were terminated "for cause," Ms. Harrison informed Plaintiffs they would not be receiving severance pay or any of their retention bonuses, earned bonuses, vested options, or unvested shares and options. Compl. ¶ 33.

Plaintiffs each received a formal termination letter dated December 30, 2004, which did not provide them with any further explanation regarding the reason behind their termination. Compl. ¶ 34. Upon their termination from Marsh, Plaintiffs did not receive their Special Retention Awards, their annual bonuses for the 2004 year of service which they had completed, their vested options, severance pay, or unvested shares or options, because Marsh arbitrarily deemed Plaintiffs' termination as "for cause." Compl. ¶ 44.

In fact, Plaintiffs were not terminated "for cause" at all. Compl. ¶ 39. Marsh had no reasonable basis for which to fire Plaintiffs so instead created the feigned explanation that they were fired for evaluating alternative employment options during the uncertain months of the Spitzer investigation. Compl. ¶ 39. The fact that Messrs. Zacharopoulos and Whiting were not terminated despite their active solicitation of other employees to leave Marsh is

further evidence that the Plaintiffs' terminations were discriminatory, arbitrary, and designed to prevent Marsh from having to pay them their owed options, shares, and severance pay. Compl. ¶¶ 39-40.

Plaintiffs pursued available remedies prior to filing suit when they asked for information regarding their severance plan. Compl. ¶ 45.  Pursuant to the Marsh USA Inc. Severance Pay Plan, if an employee requests a copy of plan documents and does not receive them within thirty (30) days, the employee may file suit in Federal court.  Compl. ¶ 45.

Mr. Anderson is entitled to his Retention Bonus of $300,00; his 2004 earned bonus of $350,000; severance of $400,000; 48,300 vested but cut-off options valued at $241,500; and the value of 17,399 unvested shares and 33,070 unvested options.  Compl. ¶ 47.

Mr. Flug is entitled to his Retention Bonus of $300,000; his 2004 earned bonus of $270,000; severance of $325,000; 35,800 vested but cut-off options valued at $179,000; and the value of 10,276 unvested shares and 31,170 unvested options.  Compl. ¶ 48.

Mr. Lattmann is entitled to his Retention Bonus of $104,000; his 2004 earned bonus of $250,000; severance of $200,000; 4,450 vested but cut-off options valued at $22,250; and the value of 3,408 unvested shares and 5,840 unvested options. Compl. ¶49.

Three-and-a-half years after Plaintiffs were terminated, Marsh now asserts, for the first time, Counterclaims alleging wrongfully that Plaintiffs conspired to misappropriate Marsh FINPRO business for their own benefit and to solicit Marsh employees to leave the Company. Countercl. ¶ 87.  They also accuse Plaintiffs of conducting clandestine off-site meetings during regular business hours, disclosing confidential and proprietary business information, and breaching their fiduciary duty to Marsh. Countercl. ¶¶ 87-88.

7

The Counterclaims are based on alleged violations of Non-Solicitation Agreements[3] and Confidentiality Agreements[4] by the Plaintiffs. It is alleged that, in or about December 2003, each of the Plaintiffs allegedly entered into a written agreement with Marsh entitled "Marsh USA Inc. Non-Solicitation Agreement for Participants in the Discretionary Bonus Plan" ("Agreement"). Countercl. ¶¶ 80-82, 87. The Agreement states that should any of the Plaintiffs be terminated for any reason, he would not, for a period of one year from the date of such termination, solicit or accept business of the type offered by Marsh or solicit employees of Marsh who worked in the same business unit. Countercl. ¶¶ 81-82. Marsh alleges, only upon information and belief, that Plaintiffs breached their obligations to Marsh under the Non-Solicitation Agreement by soliciting Marsh business, encouraging Marsh employees to quit, and by soliciting employment offers from competitors of Marsh. Countercl. ¶¶ 87, 91.

It is further alleged that, in or about December 2003, each Plaintiff entered into another written agreement with Marsh entitled "Marsh USA Inc. Confidentiality and Ownership Rights Agreement" ("Confidentiality Agreement"). Countercl. ¶ 83. Under the Confidentiality Agreements, Plaintiffs allegedly agreed not to use or disclose any confidential information of Marsh, except to the extent required to carry out his duties as an employee. Countercl. ¶ 84. Confidential information is defined to include, without limitation, "any and all information in

---

[3]    The Non-Solicitation Agreement for Plaintiff Steven H. Anderson is annexed to the Answer with Counterclaims as Exhibit A; the Non-Solicitation Agreement for Plaintiff Jack S. Flug is annexed to the Answer with Counterclaims as Exhibit B; and the Non-Solicitation Agreement for Plaintiff Jeffrey R. Lattmann is annexed to the Answer with Counterclaims as Exhibit C. Each Non-Solicitation Agreement is identical and will be referred to herein as the "Agreement."

[4]    The Confidentiality Agreement for Plaintiff Steven H. Anderson is annexed to the Answer with Counterclaims as Exhibit D; the Confidentiality Agreement for Plaintiff Jack S. Flug is annexed to the Answer with Counterclaims as Exhibit E; and the Confidentiality Agreement for Plaintiff Jeffrey R. Lattmann is annexed to the Answer with Counterclaims as Exhibit F. Each Confidentiality Agreement is identical and will be referred to herein as the "Confidentiality Agreement."

8

whatever form relating to any client or prospective client of the Company ..." Countercl., Exhs. D, E and F, sec. 2 (a)(i). The Confidentiality Agreements then extend the already impermissibly broad definition of what is to be considered "confidential," by also forbidding the disclosure of "any information not included in sections (i) or (ii) above which [the employee] . . . should know is subject to a restriction or disclosure . . ." *Id.*, sec. 2 (a)(iii). Marsh alleges, only upon information and belief, that Plaintiffs breached the Confidentiality Agreements by disclosing confidential and proprietary business information concerning Marsh, its clients, and prospective clients and employees to prospective employers. Countercl. ¶¶ 87, 101.

Marsh's myriad of Counterclaims are completely devoid of substance and fail to allege any facts upon which to support their theories. Accordingly, each claim should be dismissed with prejudice, as set forth herein.

**ARGUMENT**

I.    **THE COUNTERCLAIMS FAIL TO ALLEGE FACTS SUFFICIENT TO PLACE PLAINTIFFS ON NOTICE OF THE CLAIMS MADE AGAINST THEM**

The Counterclaims fail to set forth any acts which purportedly constitute the alleged "solicitation" of Marsh's clients or employees. The Counterclaims also fail to assert even one fact to show that any protected information was used by Plaintiffs. Not one sentence of the counterclaims gives notice to the parties of the alleged occurrences that constitute "use of confidential information" in relation to the restrictive covenants, so Plaintiffs are unable to determine what allegations have been made against them. With no facts alleged in the Counterclaims, Plaintiffs are forced to speculate as to Marsh's claims and are, therefore, unable to defend themselves. Under Fed. R. Civ. P. 8(a), because of Marsh's failure to allege facts to

support its theories and conclusory allegations, the Counterclaims must be dismissed as a matter of law.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "To comply with Rule 8, plaintiffs need not provide anything more than sufficient notice to permit defendant to file an answer." *In Re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 323 (S.D.N.Y. 2003). The only requirement is that a complaint allege the "bare minimum facts necessary to put the defendant on notice of the claim so that [it] can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002). Fair notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir. 2004) (citations omitted).

Here, Plaintiffs have no notice of the claims made against them on which to prepare a defense, since no facts have been set forth by Marsh to support the speculative and conclusory theories espoused as Counterclaims. Dismissal of the Counterclaims in their entirety is mandated. *See Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (noting that conclusory allegations are insufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted when the complaint fails to identify facts that support a claim); *see also Trautenberg v. Weiss,* No. 06 Civ. 14211 (GBD), 2008 WL 850163, *2 (S.D.N.Y. Mar. 27, 2008).

"Conclusory pleadings on 'information and belief' are inadequate as a matter of law" to survive a motion to dismiss. *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004)

(quoting *Loverly Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, No. 95 Civ. 8450, 1996 WL 732634 (S.D.N.Y. Dec. 19, 1996) (dismissing complaint with conclusory and unsupported allegations based upon "information and belief")); *see also Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state a claim). Allegations pled on "information and belief " are only proper if "accompanied by a statement of the facts upon which the belief is founded." *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.*, No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan. 23, 1985).

Here, the crux of Marsh's Counterclaims are found within only three paragraphs, which do nothing more than state, *upon information and belief*, that Plaintiffs allegedly misappropriated Marsh's unidentified confidential information and solicited unnamed Marsh employees, and the manner and means used by Plaintiffs is conspicuously absent from the unfounded allegations. Countercl. ¶¶ 87, 88, 92. Accordingly, the Counterclaims should be dismissed in their entirety.

## II.     MARSH HAS FAILED TO SET FORTH A CLAIM FOR BREACH OF CONTRACT

In order to state a claim for breach of contact, a plaintiff must allege (1) the existence of an agreement between the parties, (2) due performance of the contract by the claimant, (3) a breach of the contract by the defendant, and (4) damages resulting from the breach. *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006). Here, the Counterclaims do not satisfy the third prong of the test for a viable breach of contact cause of action because Marsh has not specified any activity that would constitute a breach by Plaintiffs. *See Texas Liquid Holdings, LLC v. Key Bank Nat'l Ass'n*, No. 05 CV 5070 (KMW), 2007

WL 950136, *2 (S.D.N.Y. Mar. 27, 2007) (dismissing breach of contact claim because plaintiff merely alleged "conclusory statements that Defendant 'breached its contractual duty'").

Marsh has failed to state a cause of action for breach of contract of either the Non-Solicitation or Confidentiality Agreements because it has wholly omitted even one factual allegation of wrongdoing by the Plaintiffs. Marsh has not alleged what, if any, information was used to purportedly solicit any of Marsh's accounts, or if any accounts were actually solicited. In fact, the Counterclaims do not mention even one client or one employee who actually left Marsh. With no basis in fact and no specificity, Marsh baldly asserts that Plaintiffs actively "solicited" Marsh clients and employees, and even that is alleged only upon information and belief. Countercl. ¶¶ 87, 88, 91, 92; *Lesavoy v. Lane*, 304 F. Supp. 2d at 527 ("Conclusory pleadings on 'information and belief' are inadequate as a matter of law" to survive a motion to dismiss).

For all that may be gleaned from the Counterclaims, Marsh has no bona fide basis to believe that Plaintiffs actively solicited any client, or former employee for that matter. Indeed, the information - confidential or otherwise - that was allegedly used to "solicit" non-identified clients or employees has not been set forth, nor have the methods by which the accounts or employees were allegedly "solicited." Accordingly, nothing more than common information, readily accessible and unprotected, may be the information to which Marsh refers.

Accordingly, without setting forth the clients or employees alleged to have been improperly solicited by Plaintiffs, or what confidential information was misappropriated, Marsh has left Plaintiffs with no clue as to the claims against them. Again, Marsh has failed to set forth a claim for breach of contract upon which relief may be granted, requiring the

dismissal of both the first and second Counterclaims. *See Utility Research, Inc. v. Generac Power Sys., Inc.*, No. 05-4940, 2006 WL 1408360 (2d Cir. May 18, 2006).

### III.    MARSH HAS FAILED TO SET FORTH A CLAIM FOR BREACH OF FIDUCIARY DUTY

Marsh's third Counterclaim for breach of fiduciary duty must be dismissed because (1) none of the Plaintiffs owed a fiduciary duty to Marsh, and (2) the claim is barred by the three-year statute of limitations. C.P.L.R. § 214(4).

First, it is settled law that no fiduciary duties exist between an employer and an at-will employee. Here, each Plaintiff was an at-will employee during his employment with Marsh. *Sullivan & Cromwell LLP v. Charney*, 84 N.Y.S.2d 222, 15 Misc. 3d 1128 (A) (N.Y. Sup. 2007); *see also Simon v. Becherer*, 775 N.Y.S.2d 313, 7 A.D.3d 66 (1st Dep't 2004). Marsh has failed to demonstrate that any of the individual defendants had a fiduciary duty, breached that duty, and that the breach resulted in damages. *See generally Deutsch v. Kroll Assoc. Inc.*, No. 02 Civ. 2892 (JSR), 2003 WL 22203740 (S.D.N.Y. Sep. 23, 2003).

Secondly, in the event that Marsh's third counterclaim is read to be a claim for breach of the duty of loyalty owed by employees to employers during the employment relationship, this claim must too be dismissed, since any claim that Plaintiffs breached a fiduciary duty or a duty of loyalty to Marsh are conclusively time barred as a matter of law. *See* C.P.L.R. § 214(4); *LaSala v. Needham & Co., Inc.*, 04 Civ. 9237 (SAS), 2006 WL 452024, *3 (S.D.N.Y. Feb. 24, 2006) (a claim seeking monetary damages for a breach of fiduciary duty claim is subject to a three-year statute of limitations); Countercl. ¶ 106.

Plaintiffs were terminated by Marsh on December 30, 2004. Accordingly, any claim for breach of fiduciary duty, or of the duty of loyalty, would have been timely only if commenced

13

within three years after Plaintiffs' termination, or by December 30, 2007. The third counterclaim for breach of fiduciary duty was commenced on May 27, 2008, thus making it nearly five months too late, and untimely as a matter of law.

Contrary to Marsh's vague allegations of wrongdoing, Plaintiffs owed Marsh no fiduciary duty, and are not alleged to have committed any acts that would constitute a breach of fiduciary duty. Under New York law, while an employee may not act in a manner which is inconsistent with his agency or trust and is bound to exercise the "utmost good faith and loyalty" in the performance of his duties, this duty does not extend to former employees. *See Louis Capital Mkts., L.P. v. Refco Group Ltd.*, 801 N.Y.S.2d 490, 493, 9 Misc. 3d 283, 286 (N.Y. Sup. 2005). Significantly, Marsh has not alleged any wrongdoing after Plaintiffs were terminated by Marsh. Plaintiffs only allege that "counterclaim-defendants . . .engaged in extraordinary efforts to conceal their plan from Marsh, organizing and conducting clandestine off-site meetings during regular business hours, plotting ways (amongst themselves, as well as with prospective employers) of circumventing their contractual and fiduciary obligations to Marsh." Countercl. ¶ 88.

It is well settled law in New York that "merely taking steps not involving any dereliction of positive duties to a current employer in preparation for taking a competitive job does not involve any breach of fiduciary duty." *American Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 906 (2d Cir. 1998); *FTI Consulting, Inc. v. Graves*, No. 05 Civ. 6719 (NRB), 2007 WL 2192200, *10 (S.D.N.Y. July 31, 2007); *Lombard v. L-3 Commc'ns Corp.*, Nos. 98 Civ. 5277 (DC), 98 Civ. 9039 (DC), 2000 WL 1459824, *8 (S.D.N.Y. Sept. 29, 2000) ("An employee breaches no

14

fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed . . .") (citations omitted).

Nevertheless, none of the Plaintiffs breached a duty to Marsh, which is not even plead. The most that can be read of the Counterclaims, with the highest effort of strained interpretation in light of the glaringly absent allegation of *facts*, is that Plaintiffs looked for other jobs while employed with Marsh, which resulted in Plaintiffs' subsequent employment with a Marsh competitor, after having been involuntarily terminated by Marsh. Since this activity does not constitute a breach of fiduciary duty as a matter of law (*see Lombard, supra*), and this claim has been brought after the expiration of the three-year statute of limitations for breach of fiduciary duty claims, Marsh's third Counterclaim must also be dismissed.

## IV. MARSH HAS FAILED TO SET FORTH A CLAIM FOR MISAPPROPRIATION OF CONFIDENTIAL AND PROPRIETARY INFORMATION

Marsh's fourth Counterclaim for misappropriation of confidential and proprietary information fails for two reasons: (1) Marsh has failed to set forth the confidential or proprietary information it vacuously alleges was misappropriated, as set forth above, and (2) the claim is untimely as it was similarly commenced after the three-year statute of limitations expired.

New York trade secret misappropriation claims are governed by a three-year statute of limitations for suits based on injury to property. N.Y. C.P.L.R. § 214(4). "If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure." *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 433 (S.D.N.Y. 1996) (citation omitted).

Here, Marsh merely concludes that "[d]uring the course of his employment and thereafter, each of the counterclaim-defendants wrongfully appropriated for his own use and benefit, and disclosed to third parties, including Beecher, Marsh's confidential and proprietary information, for the purpose of soliciting Marsh's clients, prospective clients and employees." Countercl. ¶ 109. Plaintiffs' employment with Marsh ended on December 30, 2004, yet the Counterclaims were not commenced until May 27, 2008. Since the allegations relate only to the time within which Plaintiffs were employed with Marsh (which ended on December 30, 2004), and Marsh makes no effort to substantiate its impermissibly vague extension of the period of alleged wrongdoing by inserting the word "thereafter" into its claim, this cause of action is untimely as a matter of law,[5] and must be dismissed.

## V.   MARSH HAS FAILED TO SET FORTH A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND PROSPECTIVE BUSINESS RELATIONS

"To state a claim for tortious interference with business relations, plaintiff must plead: (1) plaintiff had a business relation with a third party; (2) defendant interfered with those business relations; (3) defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Interboro Packaging Corp. v. G.P. Plastics Corp.*, No. 02 Civ. 2140(RO), 2003 WL 21403807, * 1 (S.D.N.Y. June 18, 2003). A claim for "tortious interference with prospective business relations" is actionable in New York as "tortious interference with prospective economic advantage" yet, regardless of the name used,

---

[5]    In the event the Court finds a question of fact regarding the statute of limitations based upon Marsh's vague and ambiguous allegations, Plaintiffs respectfully request that the Court issue an Order finding that all claims for misappropriation arising from events prior to May 27, 2005 (which is three years before the Counterclaims were filed) are untimely as a matter of law. *See Architectronics*, 935 F. Supp. at 433 (finding that each use of misappropriated confidential information constitutes independent acts for statute of limitations purposes).

16

the elements are the same.[6] *See W.S.A., Inc. v. ACA Corp.*, Nos. 94 Civ. 1868 (CSH), 94 Civ. 1493

(CSH), 1996 WL 551599 *8, fn 11 (S.D.N.Y. Sept. 27, 1996); *see also Constantin Assoc. v. Kapetas*,

851 N.Y.S.2d 68, 17 Misc. 3d 1137 (A)(N.Y. Sup. 2007). Furthermore, to establish a case for

tortious interference with prospective economic advantage in New York, "the plaintiff must

show that an *actual contract* would have been entered *but for* the defendants' improper acts

..." *Id.* (emphasis in original). Under either title, Marsh has failed to sufficiently allege a cause

of action.

Marsh has failed to allege the requirements for establishing these claims. Nowhere in

the Counterclaims does Marsh name one single third party with whom Marsh had business

relations or prospective business relations, other than vague and insufficient allusions to

Marsh's "clients" and "prospective clients." Compl. ¶ 119. In addition, nowhere in the

Counterclaims does Marsh allege how Plaintiffs interfered with those relations. "A general

allegation of interference with customers without any sufficiently particular allegation of

interference with a *specific contract or business relationship* will not withstand a motion to

dismiss." *Envirosource, Inc. v. Horsehead Res. Dev. Co., Inc.*, No. 95 CIV 5106, 1996 WL 363091,

* 14 (S.D.N.Y. July 1, 1996) (internal quotations omitted) (emphasis in original).

In order to establish a *prima facie* case of tortious interference with business relations

and prospective economic advantage, Marsh must show that the alleged interference was

either with the sole purpose of harming it or by "wrongful means." *PKG Group, LLC v. Gamma*

---

[6] "The Second Circuit has held that in order to state a claim for tortious interference with prospective
economic advantage, a claimant must show (1) business relations with a third party; (2) defendants'
interference with those business relations; (3) that defendants acted with the sole purpose of harming
the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Finkelstein
v. Wachtel*, No. 00 Civ. 2672(JSM), 2003 WL 1918309, *4 (S.D.N.Y. Apr. 21, 2003).

*Croma, S.p.A.*, 446 F. Supp. 2d 249, 249 (S.D.N.Y. 2006). Marsh has failed to adequately allege that the Plaintiffs' alleged interference was accomplished either by "wrongful means" or that they acted for the sole purpose of harming Marsh. *Id.* "In all but the most egregious circumstances, 'dishonest, unfair, or improper means' must amount to misconduct that constitutes either a crime or an independent tort." *Id.* at 250; *see also Strapex Corp. v. Metaverpa N.V.*, 607 F. Supp. 1047 (S.D.N.Y. 1985). The Court of Appeals has held that an allegation of "wrongful means" requires "more than simple persuasion." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 50 N.Y.2d 183 (N.Y. 1980).

Marsh fails to allege, with any specificity, any wrongful conduct by Plaintiffs. Because any allegation that the Plaintiffs' actions were wrongful or unlawful is wholly "conclusory and without support," Marsh's claim for tortious interference should be dismissed. *LoPresti v. Massachusetts Life Ins. Co.*, 820 N.Y.S.2d 275, 30 A.D.3d 474 (2d Dep't 2006); *see also Vigoda v. DCA Prod. Plus Inc.*, 741 N.Y.S.2d 20, 293 A.D.2d 265 (1st Dep't 2002) (finding that plaintiffs' claim for tortious interference with prospective economic relations failed for several reasons, including that plaintiffs "utterly failed to identify the 'wrongful means' used by defendants to interfere"); *see also M.J. & K. Co., Inc. v. Matthew Bender and Co.*, 220 A.D.2d 488, 631 N.Y.S.2d 938 (2d Dep't 1995) (finding that plaintiffs' cause of action for tortious interference with business relations failed because their conclusory allegations without factual support were insufficient to state a cause of action.)

In *Polar Int'l Brokerage Corp. v. Richman*, 737 N.Y.S.2d 79, 291 A.D.2d 219 (1st Dep't 2002), the First Department held that plaintiff's cause of action for tortious interference with prospective economic advantage should have been dismissed where evidence that defendant

18

had assisted in the solicitation of plaintiff's clients was "insufficient to raise a question of fact as to whether [defendant] had employed wrongful means with the sole objective of harming plaintiffs." Similarly, in this dispute between insurance brokers, Marsh's lack of any evidence, and failure to allege sufficient actions taken by the Plaintiffs that employed wrongful means, all with the sole objective of harming Marsh, mandate that this cause of action be dismissed.

Not only has Marsh failed to allege any wrongful conduct, other than vague speculation, but Marsh has also failed to show that any alleged statement or conduct by the Plaintiffs was the "but for" cause of any loss of prospective economic relations.    To plead tortious interference with prospective economic advantage, "a plaintiff must allege 'that plaintiff would have entered into an economic relationship *but for* the defendant's wrongful conduct," and name the parties to any specific contract [he] would have obtained.'" *Knight-McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2004 WL 1713824, *4 (S.D.N.Y. July 29, 2004) *(*emphasis added) *citing Vigoda*, 741 N.Y.S.2d 20 (1st Dep't 2002); *see  Ulico Cas. Co. v. Wilson, Esler, Moskowitz, Edelman & Dicker,* 843 N.Y.S.2d 749, 769 (N.Y. Sup. 2007) (dismissing cause of action for tortious interference with prospective economic advantage where plaintiff failed to demonstrate that "but for" conduct, agreement would not have been breached or business would not have transferred).   As the Counterclaims contain no allegations that but for Plaintiffs' conduct, Marsh would have entered into a business or economic relationship, Marsh simply has not met its burden. Therefore Marsh's fifth Counterclaim should be dismissed in its entirety.

19

## VI.    MARSH HAS FAILED TO SET FORTH A CLAIM FOR UNFAIR COMPETITION

Marsh brings its sixth Counterclaim against the Plaintiffs for Unfair Competition. Countercl. ¶¶ 114-117. Marsh alleges that each of the Plaintiffs "conspired to misappropriate Marsh FINPRO business for their own benefit," Countercl. ¶ 87, and "using Marsh's confidential and proprietary information, participated in a scheme to solicit Marsh's clients, prospective clients and employees for his own benefit and the benefit of Beecher, a direct competitor of Marsh." Countercl. ¶ 115. Marsh goes on to allege that each of the Plaintiffs' "wrongful use of Marsh's confidential and proprietary information provided him with an unfair competitive advantage that he would not have otherwise enjoyed." Countercl. ¶ 116. Yet, nowhere in the Counterclaims does Marsh allege any acts of misappropriation, nor does Marsh allege the specifics of this "scheme." Nowhere in the Counterclaims does Marsh clarify what "confidential and proprietary information" it accuses the Plaintiffs of using or exactly what unfair competition this purported use created.    Even taking all factual allegations in the Counterclaims as true and drawing all reasonable inferences in Marsh's favor, Marsh has failed to allege sufficient facts to sustain this cause of action against the Plaintiffs.

The central principle underlying a claim for unfair competition under New York law is that one may not misappropriate the results of the labor, skill, and expenditures of another in bad faith. Although unfair competition may take many forms, the pivotal question is always whether the conduct complained of is fair or unfair. *See Astroworks, Inc. v. Astroexhibit, Inc.,* 257 F. Supp. 2d 609, 619 (S.D.N.Y. 2003) (internal citations and quotation marks omitted). Moreover, "[i]n order to properly allege the misappropriation aspect of an unfair competition claim, a plaintiff is required to plead (1) acts or omissions by defendants that proximately

caused a misappropriation, and (2) the property or benefit misappropriated." *Id.* (internal quotation marks omitted); *see also Commercial Data Servers, Inc. v. Int'l Bus. Mach. Corp.*, 166 F. Supp. 2d 891, 894 (S.D.N.Y. 2001) (granting defendant's motion to dismiss when plaintiff's allegations, on their face, did not plead ownership of any proprietary data or technological innovation that could possibly have been misappropriated by defendant); *see also Data Broad. Corp. v. Tele-Commc'ns, Inc.*, No. 92 Civ. 4840 (JFK), 1992 WL 350624, * 4, n. 4 (S.D.N.Y. Nov. 19, 1992) (stating that in order to properly state a claim for unfair competition, the claimant must allege the specific acts of misappropriation used to gain a commercial advantage and must identify specifically what property was misappropriated).  Here, Marsh has failed to allege (1) acts or omissions by Plaintiffs that proximately caused a misappropriation, and (2) the property or benefit that the Plaintiffs have allegedly misappropriated.  Thus, Marsh has not properly alleged the misappropriation aspect of unfair competition.

A required element of a common-law claim for unfair competition is that the defendant, in bad faith, has misappropriated the labors and expenditures of another. *See Czech Beer Imp., Inc. v. C. Haven Imp., LLC.*, No. 04 Civ. 2270 (RCC), 2005 WL 1490097, *7 (S.D.N.Y. June 23, 2005) (granting defendant's motion to dismiss a claim for unfair competition where plaintiff asserted that a third party improperly provided plaintiff's confidential information to defendant but plaintiff failed to allege that the defendant misappropriated the information from the third party, stating that the cause of action cannot be sustained by simply alleging that the defendant's actions were unfair).

In this case, Marsh has not alleged that the Plaintiffs misappropriated the results of the labor, skill, or expenditures of Marsh in bad faith or otherwise, requiring the dismissal of this

claim. *See Bulger v. Royal Doulton, PLC*, 05 Civ. 7709 (DAB), 2006 WL 3771016, *8 (S.D.N.Y.

Dec. 19, 2006) (dismissing a claim for unfair competition with prejudice because plaintiffs

failed to allege more than a conclusory allegation that "Defendants' conduct was willful,

malicious, oppressive, and committed with actual or constructive knowledge . . ."). Here,

Marsh merely states a vague allegation that Plaintiffs enjoyed an "unfair competitive

advantage," Countercl. ¶ 116, and the Counterclaims contain no factual allegations that the

Plaintiffs misappropriated any information from Marsh and used it unfairly.    Therefore,

Marsh's sixth Counterclaim for unfair competition should be dismissed.

## VII.    MARSH HAS FAILED TO SET FORTH A CLAIM FOR RECOUPMENT

In order to raise a valid claim for recoupment, the claim must arise out of the same

contract or transaction upon which the primary claim is based and seek only a defensive setoff,

as opposed to an affirmative recovery. *United States v. Forma*, 42 F.3d 759, 765 (2d Cir. 1994);

*United States v. Green*, 33 F. Supp. 2d 203, 223 (W.D.N.Y. 1998).   Claims for recoupment are

compulsory counterclaims, and may only be asserted in connection with a defense to the

original claims. *United States v. Hayward-Robinson Co.*, 430 F.2d 1077, 1081 (2d Cir. 1970), *cert.*

*denied*, 400 U.S. 1021, 91 S.Ct. 582 (1970).   Because Marsh's counterclaims are invalid and do

not establish that Marsh is entitled to a recovery against Plaintiffs' claims, thus removing the

required nexus to sustain a counterclaim for recoupment, Marsh's seventh Counterclaim for

recoupment has no basis in law or fact and should be dismissed.

**CONCLUSION**

For all of the above reasons, it is respectfully submitted that Plaintiffs' Motion to

Dismiss Defendant Marsh USA Inc.'s Counterclaims be granted in its entirety.

Dated: New York, New York
       June 16, 2008

                              FENSTERSTOCK & PARTNERS LLP


                    By:    _____
                           Blair C. Fensterstock
                           Jeanne M. Valentine
                           Allison M. Charles

                           30 Wall Street, 9th Floor
                           New York, NY 10005
                           Telephone: (212) 785-4100

                           *Attorneys for Plaintiffs/*
                           *Counterclaim-Defendants*

23